CABINET

COTTRILL (MYERS v.). See Case No. 9,985.

COUCH (UNITED STATES v.). See Case No. 14,874.

CABINET

## Case No. 3,273.

### COULON v. The NEPTUNE.

[2 Pet. Adm. 356.][1]

District Court, D. Pennsylvania. 1804.

SALVAGE—PURCHASER OF CONDEMNED VESSEL.

The brig Neptune had been purchased by the libellant after a condemnation by an unauthorized tribunal; and, having been brought into Philadelphia, she was here claimed by the former owners, and was restored to them by the district court. A claim for salvage was made by the purchaser after the condemnation, he having brought her within the power of her former owners. The district court dismissed the claim.

[Libel in admiralty by Paul Coulon against John Jolly, Richard Keys, and William Manson, owners of the brig Neptune, for salvage.]

Before PETERS, District Judge.

Decree: The brig Neptune, being American property, belonging to the respondents, citizens of the United States, and resident in Baltimore, was seized by a French armed vessel, commanded by a certain Henry Anderson, under pretext of having violated an arrette issued by the late General Le Clerc, when comander in chief and governor of St. Domingo, interdicting trade and commerce with certain ports in the French part of that island, to prevent supplies to the revolted blacks. On her being so seized, at sea, several leagues from the island, and out of all territorial jurisdiction and limits, she was sent to St. Jago de Cuba, in the island of Cuba, belonging to, and under the actual government of, Spain. The vessel having been so dispatched for St. Jago, a pretended court of admiralty was held, at sea, on board the capturing cruizer, by General De Noailles, then in the service of France, and some officers of a tribunal which had been established in St. Domingo. The brig, by this self-created court, was condemned. The persons composing this pretended court were then in a state of flight from the island of St. Domingo, then in full possession of the blacks, who had expelled the French soldiers and citizens, and extinguished all power and government, under France, in that island.

The libellant, stating himself to be an American citizen, purchased the brig in St. Jago, from an agent of Anderson, the seizer (from whom he took a warranty), with intent to employ her in commerce, or as a passenger ship, for his emolument. Considerable outfits were made on the vessel for

[1] [Reported by Hon. Richard Peters, District Judge.]

these purposes by Coulon. Some passengers embarked in the vessel, and arrived in Philadelphia, where the brig was restored, by a decree of this court, to the American owners, now the respondents. [Case No. 7,439.] The facts of intercourse with interdicted ports, for purposes of traffic, were denied; and the condemnation was deemed and declared illegal and invalid.

A claim is now brought forward for salvage. No demand for amelioration. The allegations contained in the procedings were insisted on, as entitling to salvage (no matter from what motive the libellant acted), as a benefit had accrued to the owners by the purchase in St. Jago, and bringing into an American port, in a capacity to be restored. I can find no precedent in the books to warrant a claim to salvage by a purchaser of a ship liable to be restored. There are some instances where recaptors or rescuers have had salvage, though the vessel was restored to the owners after having been purchased under a bad title. Such cases seldom occur. A neutral may lawfully purchase, in the port of a belligerent party, a ship legally condemned as prize. But care must be taken on this point, as some national tribunals are more strict than others in scrutinizing the title of a ship procured in this way. The English permit purchases by neutrals of ships legally condemned in their enemies' ports. The French do not acknowledge their validity.[2] Salvage is not given as a mere quantum meruit for benefit received. It is a premium to stimulate exertion, prowess and personal danger and risk.[3] The novelty of this claim may create a bias in my mind, which I have in vain endeavoured to resist. The case has always appeared to me to be brought forward more to ground a recovery over, on the guarantee, than under a hope of success here. It is true that the motives for saving property are generally interested. But the motives, in this case, are not so important as the principles of the claim. Before anything can be saved, it must be lost to the owner, or on the point of so being, without hope of recovery, either specifically or in value. I am inclined to consider the seizure in this case a mere spoliation, for which either the French or Spanish government should have paid the owners of the brig in case of loss. My official respect for those governments will not permit a belief that they will not do what they ought. The courts of one country must presume that the governments of friendly nations will always do justice. I do not, however, think it incumbent on me to determine collaterally a question involving national duties and obligations, further than the case before me compels an opinion. A neutral government ought not to restore a vessel of its friend,

brought into port, captured by another friend, as prize in war. But it is otherwise where a ship belonging to a friend is brought in under restraint on seizure by another friend, and all parties at peace. A pretext of seizure for breach of local regulations ought not to take the case out of this rule of the law of nations. Such pretexts would never be wanting, if they would justify sales and transfers of vessels seized under these pretences.

If this view of the subject be correct, the brig in question was not legally, or in fact, lost, to the American owners, when carried into the Spanish port of St. Jago. The purchase by Paul Coulon (more especially if an American citizen) was not justifiable, much less meritorious. If he bought under a bad title, he must take the risk. He appears to have considered this consequence when he took the guarantee from the vendor in St. Jago. If he is disappointed in his expectations of profit, the owners should not reimburse expenditures for this object. As well might they be called on to repay the purchase-monies paid the captors. Why ask to retribute a part? I agree with the counsel for the respondents, that if salvage, in our own courts, could be obtained, great encouragement would be given to such captures and illegal sales. In this case, what is given to the libellant would be so much saved to the vendor, when called on under his guarantee by Mr. Coulon.

I do not think it necessary to discuss all the points in this cause. How far and in what manner a nation has a right to interdict commerce by other nations with its revolted subjects, or their slaves in a state of insurrection? Whether French colonial arrettes die with the extinction of the government promulgating them? And what is the state of things, as they respect us, in the island of St. Domingo? These questions seem to be subjects more fit for diplomatic discussion, or legislative direction, than judicial decision. They are unimportant in this case, as the fact of intercourse, for the purposes of traffic with interdicted ports, is denied. If Spain was bound to restore the brig in question, or remunerate the owners for their loss; if at any rate no sale such as herein stated could be legally made, and of course the purchase unwarrantable, and defective in that merit which is the foundation for a claim to salvage, it is enough for the purposes of decision in this suit.

The results from this view of the case tend to shew: 1st. That the vessel or value thereof, was not lost to the owners by the seizure and carrying to the port of St. Jago. 2d. That the benefit derived to the owners by Mr. Coulon's purchase is at least problematical, and not a direct consequence of such purchase, or flowing from any meritorious conduct on his part. He has not the equitable claim to considerations attaching to an innocent purchase, by mistake or ignorance

[2] 1 C. Robb. Adm. 104.
[3] See the case of Warder v. The Belle Creole [Case No. 17,165].

of title. The whole circumstances were known to, and guarded against by, the libellant. I do therefore adjudge, order and decree that the libel filed in this cause be dismissed with costs.